UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Tyson Schultz and Brian Schultz,<br><br>    Plaintiffs,<br><br>v.<br><br>Global Service Group, LLC,<br><br>    Defendant. | Case No.<br><br><br>**COMPLAINT FOR DAMAGES UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, THE TELEPHONE CONSUMER PROTECTION ACT AND OTHER EQUITABLE RELIEF**<br><br>**JURY TRIAL DEMANDED** |

**PARTIES**

1. Plaintiff, Tyson Schultz ("Tyson"), is a natural person who resided in Wauna, Washington, at all times relevant to this action.

2. Plaintiff, Brian Schultz ("Brian"), Tyson's brother, is a natural person who resided in Brookfield, Wisconsin, at all times relevant to this action.

3. Defendant, Global Service Group, LLC ("GSG"), is a Delaware limited liability company that maintained its principal place of business in Chicago, Illinois, at all times relevant to this action.

**JURISDICTION AND VENUE**

4. Pursuant to 28 U.S.C. §1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5. Pursuant to 28 U.S.C. § 1391(b), venue is proper because GSG resides in this judicial district.

**STATEMENT OF FACTS**

6. Before GSG began contacting Tyson, it and Tyson had no prior business relationship and Tyson had never provided express consent to GSG to be contacted on his cellular telephone.

7. GSG regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

8. The principal source of GSG's revenue is debt collection.

9. GSG is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

10. As described, *infra*, GSG contacted Tyson to collect a debt that was incurred primarily for personal, family, or household purposes.

11. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

12. Tyson and Brian are a "consumers" as defined by 15 U.S.C. § 1692a(3).

13. Within the past twelve months, and before, GSG has been calling Tyson on his cellular phone ending in -3003 in an attempt to collect a debt for another individual, Brian.

14. During one of the initial conversations, Tyson informed GSG they called the wrong number.

15. Despite this communication, GSG continued to call Tyson on his cellular phone ending in -3003 in an attempt to collect a debt for Brian.

16. GSG called Tyson on his cellular phone on an almost daily basis.

17. On several occasions, Tyson notified GSG they called the wrong number; nevertheless, GSG continued to call Tyson on his cellular phone.

18. During one conversation, Tyson inquired as to the purpose of GSG's call.

19. GSG told Tyson that GSG needed to discuss an urgent legal matter with Brian.

20. Additionally, GSG demanded Tyson have Brian contact GSG.

21. GSG's policies and procedures for processing account data received from original creditors fail to identify easily discoverable errors and avoid the needless harassment of undeserving consumers like Tyson.

22. GSG unreasonably relied upon inaccurate information provided to GSG by one (1) or more original creditors for whom GSG was attempting to collect a debt when GSG called Tyson's cellular telephone.

23. GSG's policies and procedures violate the FDCPA.

24. GSG's collection efforts, including but not limited to its telephone calls, caused Tyson and Brian emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

25. GSG's collection efforts also intruded upon Brian's privacy.

26. In addition, each time GSG placed a telephone call to Tyson, GSG occupied Tyson's telephone number such that Tyson was unable to receive other phone calls at that telephone number while GSG was calling him.

27. GSG's telephone calls also forced Tyson to lose time by having to tend to GSG's unwanted calls.

## COUNT ONE

### Violation of the Fair Debt Collection Practices Act

28. Tyson re-alleges and incorporates by reference Paragraphs 13 through 27 above as if fully set forth herein.

29. GSG violated 15 U.S.C. § 1692c(a)(1) by calling Tyson at a time or place known to be inconvenient for Tyson.

## COUNT TWO

### Violation of the Fair Debt Collection Practices Act

30. Brian re-alleges and incorporates by reference Paragraphs 13 through 27 above as if fully set forth herein.

31. GSG violated 15 U.S.C. §1692c(b) by communicating with a third party in connection with the collection of the debt without Brian's consent.

## COUNT THREE

### Violation of the Fair Debt Collection Practices Act

32. Tyson and Brian re-allege and incorporate by reference Paragraphs 13 through 27 above as if fully set forth herein.

33. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2nd Cir. 2010); *Horkey v. J.V.D.B. & Assocs., Inc.*, 333 F.3d 769, 774 (7th Cir. 2013) ("[Plaintiff] points to no evidence in the record regarding [Defendant's] intent, which is just as well, because intent is irrelevant" in a § 1692d claim).

34. "Instead, applying an objective standard, as measured by the 'least sophisticated consumer,' the consumer need only show that the likely effect of the debt collector's communication or conduct could be construed as harassment, oppression or abuse." *See Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 721 (S.D. Tex. 2012).

35. The likely effect of GSG's debt collection efforts, as measured by the "least sophisticated consumer" standard, was "to harass, oppress, or abuse" Tyson and Brian.

36. GSG's violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Tyson and Brian in connection with the collection of the debt.

## COUNT FOUR

### Violation of the Fair Debt Collection Practices Act

37. Tyson re-alleges and incorporates by reference Paragraphs 13 through 27 above as if fully set forth herein.

38. A debt collector's intent to violate the FDCPA may be inferred by its maintenance of policies and procedures which, in themselves, violate the FDCPA. *See Anchondo v. Anderson, Crenshaw & Associates, L.L.C.,* 256 F.R.D. 661, 671 (D.N.M. 2009); s*ee also Kromelbein v. Envision Payment Sol., Inc.*, 2013 WL 3947109, *7 (M.D. Penn. Aug. 1, 2013)*(*"company policy can be just as much a violation of [FDCPA] as the rogue act of an individual employee. If anything, a company policy that violates the FDCPA is a more egregious transgression because it indicates endemic, rather than isolated, disregard for debtor rights."); *citing Edwards v. Niagara Credit Sol., Inc.*, 586 F. Supp. 2d 1346, 1354 (N.D. Ga. 2008) (awarding maximum damages in part because conduct was company policy, thereby making it routine and frequent).

39. GSG's policies and procedures, as described in Paragraphs 21 through 22 *supra*, constitutes "conduct the natural consequence of which is to harass, oppress, or abuse" consumers.

40. GSG's practice, therefore, violates Section 1692d of the FDCPA, which provides:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

*See* 15 U.S.C. §1692d.

41. Because GSG's practice, in itself, violates the FDCPA, it reflects an intent to harass consumers generally.

42. GSG violated 15 U.S.C. § 1692d(5) by causing Tyson's telephone to ring or engaging Tyson in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass Tyson.

## COUNT FIVE

### Violation of the Fair Debt Collection Practices Act

43. Brian re-alleges and incorporates by reference Paragraphs 13 through 27 above as if fully set forth herein.

44. GSG violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations or means in connection with the collection of the debt.

## COUNT SIX

### Violation of the Fair Debt Collection Practices Act

45. Tyson and Brian re-allege and incorporate by reference Paragraphs 13 through 27 above as if fully set forth herein.

46. GSG violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt.

## COUNT SEVEN

### Violation of the Telephone Consumer Protection Act

47. Tyson re-alleges and incorporates by reference Paragraphs 13 through 27 above as if fully set forth herein.

48. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

   > Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

   137 Cong. Rec. 30,821 (1991).

49. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity…(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

50. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

51. A telephone dialing system with predictive dialer functionality is an ATDS within the meaning of the TCPA. *Sterk v. Path, Inc.*, 46 F. Supp. 3d 813, 818-19 (N.D. Ill. 2014); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7973, ¶ 13 (2015); *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the*

*Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

52. GSG used a telephone dialing system with predictive dialer functionality to place calls to Tyson on his cellular telephone.

53. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> * * *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

54. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999-8000, ¶ 72-73 (2015).

55. Any consent that may have been previously given as to a called telephone number lapses when that number is reassigned. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 641 (7th Cir. 2012); *Sterling v. Mercantile Adjustment Bureau, LLC*, 2014 WL 1224604, *3 (W.D.N.Y. Nov. 22, 2013).

56. A caller that places calls to a reassigned telephone number without the express consent of the called party is deemed to have "constructive knowledge" of the reassignment after one phone call has been placed to that reassigned number. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7999-8000, ¶ 72 (2015).

57. Tyson was the "called party" in each telephone call GSG placed to Tyson's cellular telephone.

58. GSG violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Tyson on his cellular telephone without Tyson's prior express consent or after such consent had been revoked.

59. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

60. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

61. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc*. 2015 WL 1522244, *9 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, *7 (N.D. Ill. Mar. 19, 2013); *Stewart v. Regent Asset Mgmt. Solutions, Inc.*, 2011 WL 1766018, *7 (N.D. Ga. May 4, 2011).

62. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 WL 1154206, at *7; see also *Roylance*, 2015 WL 1522244, at *9 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

63. GSG voluntarily placed telephone calls to Tyson's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

64. In addition, a company that places telephone calls using an ATDS and/or an artificial or prerecorded voice bears a responsibility to place intermittent live verification calls to ensure the subscriber being called has provided his or her express consent to be called. *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014).

65. GSG failed to adequately place intermittent live verification calls to Tyson's cellular telephone number to ensure that Tyson had provided his express consent to GSG to call those telephone numbers.

66. GSG's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## JURY DEMAND

67. Tyson and Brian demand a trial by jury.

## PRAYER FOR RELIEF

68. Tyson and Brian pray for the following relief:

    a. Judgment against GSG, in favor of Tyson and Brian, for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. An order enjoining GSG from placing further telephone calls to Tyson's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    c. Judgment against GSG, in favor of Tyson, for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call GSG made in violation of the TCPA.

    d. For such other legal and/or equitable relief as the Court deems appropriate.

                                              RESPECTFULLY SUBMITTED,

Date: February 9, 2018                By:   /s/ Michael K. Bane
                                              Michael K. Bane, Esq.
                                              Illinois Bar No. 6285689
                                              HYSLIP & TAYLOR, LLC, LPA
                                              1100 W. Cermak Rd., Suite B410
                                              Chicago, IL  60608
                                              Phone: 312-380-6110
                                              Fax: 312-361-3509
                                              Email: michael@lifetimedebtsolutions.com

                                              *Attorney for Plaintiffs*